## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| CAUSE OF ACTION INSTITUTE<br>1875 Eye Street, N.W., Suite 800<br>Washington, D.C. 20006, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 19-2784 |
| THE WHITE HOUSE<br>OFFICE OF MANAGEMENT AND BUDGET<br>725 17th Street, N.W.<br>Washington, D.C. 20503, | ) ) ) ) ) | |
| Defendant. | ) ) ) | |

---

## COMPLAINT
### (For Declaratory and Injunctive Relief)

1. Plaintiff Cause of Action Institute ("CoA Institute") brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. chs. 5, 7, to hold unlawful and set aside Defendant White House Office of Management and Budget's ("OMB") denial of CoA Institute's petition for rulemaking.

2. In June 2016, CoA Institute submitted a petition for rulemaking to OMB asking that the agency "issue updated guidance to agencies on how to make Freedom of Information Act ('FOIA') fee determinations in compliance with binding statutory and judicial authorities." Ex. 1 at 1. CoA Institute also requested that OMB "update its own FOIA fee regulations, which conflict with statutory definitions." *Id.*

3.     By letter, dated June 29, 2018, OMB responded to CoA Institute and, in relevant part, denied the petition that it update the FOIA fee guidance.  Ex. 2 at 1 ("OMB declines to adopt COA's proposed changes to its Fee Guidance.").

4.     In support of its refusal to update its fee guidance, OMB made three broad claims: (1) that no agency subject to the FOIA "is <u>currently</u> relying" on outdated or superseded portions of the current fee schedule and guidelines, *id.* at 1; (2) that "every agency subject to the FOIA" is already responsible for maintaining its own implementing regulations, which renders updated government-wide fee guidance "redundant," *id.* at 2; and (3) that any effort to update the guidance would be "an unreasonable and substantial use of . . . limited resources" because courts continue to "interpret[] the FOIA statute." *Id.*

5.     On each count, OMB's arguments fail to justify the denial of CoA Institute's petition. *First*, agencies continue to rely on OMB's government-wide guidance, despite it having been rendered obsolete in various ways.

6.     *Second*, those same agencies often have failed to update their regulations to eliminate outdated language drawn from the current guidance, and the Department of Justice's ("DOJ") Office of Information Policy ("OIP") strongly encourages agencies to maintain references to the current OMB guidelines as authoritative for implementing the FOIA.

7.     *Third*, the ongoing adjudication of FOIA cases cannot excuse an agency from ever making the effort to update its regulations and guidance.

8.     For these reasons, OMB's denial is unlawful and must be set aside.

<u>**JURISDICTION AND VENUE**</u>

9.     Jurisdiction is asserted pursuant to 28 U.S.C. § 1331 (federal question), 5 U.S.C. § 706(1) (APA), and 28 U.S.C. § 2201 (declaratory judgment).

10.     Venue is proper pursuant to 28 U.S.C. § 1391(e).

<u>**PARTIES**</u>

11.     CoA Institute is a 501(c)(3) nonprofit strategic oversight group committed to ensuring that government decision-making is open, honest, and fair. In carrying out its mission, CoA Institute uses various investigative and legal tools, including the FOIA, to educate the public about the importance of government transparency and accountability.   CoA Institute submitted the petition for rulemaking to OMB that is the subject of this Complaint and is an "interested person" under 5 U.S.C. § 553(e).

12.     OMB is an agency within the meaning of 5 U.S.C. § 551(1).  It received and denied the petition for rulemaking that is the subject of this Complaint.  OMB has statutory authority and responsibility to provide and maintain both a uniform schedule of FOIA fees for all agencies subject to the FOIA and guidelines on how to apply that schedule.  *See* 5 U.S.C. § 552(a)(4)(A)(i).

<u>**FACTS**</u>

**I.     OMB's Outdated FOIA Fee Guidelines**

13.     In 1986, Congress passed, and President Reagan signed into law, the Freedom of Information Reform Act of 1986.  *See* Pub. L. 99-570, 100 Stat. 3207 [hereinafter "FOIA Reform Act"].

14.     Section 1803 of the FOIA Reform Act directed OMB to provide a uniform schedule of fees for all federal agencies, as well as guidelines for how to apply that schedule to FOIA requesters. *Id.* § 1803; 5 U.S.C. § 552(a)(4)(A)(i).

15.     Agencies subject to the FOIA are required to promulgate their own FOIA fee regulations, which "shall conform to the guidelines . . . promulgated" by OMB. 5 U.S.C. § 552(a)(4)(A)(i).

16.     On March 27, 1987, OMB finalized the fee schedule and guidelines. *See* Uniform Freedom of Information Act Fee Schedule and Guidelines, 52 Fed. Reg. 10,012 (Mar. 27, 1987) [hereinafter "OMB Guidelines"], Ex. 3.

17.     Although Congress has amended the FOIA several times since 1987, and despite courts rejecting interpretations of the FOIA that rely on the guidance, OMB has never updated its government-wide fee guidelines, which now conflict with the FOIA statute in meaningful ways.

### Statutory Supersession: "Representative of the News Media"

18.     One important way in which the OMB Guidelines conflict with the FOIA concerns the definition of a "representative of the news media."

19.     The FOIA requires agencies to furnish records at a reduced cost, if a requester qualifies for one of several "favored" fee categories.  *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II).

20.     Since these categories were added to the statute, the "representative of the news media" fee status has been the most contentious.

21.    In its 1987 guidance, OMB interpreted the term "representative of the news media," which was, at that time, statutorily undefined.  *See* Ex. 3 at 7 (52 Fed. Reg. at 10,018).

22.    Specifically, the OMB Guidelines state that the category includes "any person actively gathering news for an entity that is organized and operated to publish or broadcast news to the public."  *Id.*

23.    This became known as the "organized and operated" standard, and agencies across the government adopted it in their respective FOIA fee regulations, as the FOIA statute directed them to do.

24.    In 2007, Congress amended the FOIA and provided an explicit statutory definition of a "representative of the news media" that meaningfully differed from the definition in the OMB Guidelines.  *See* Open Government Act of 2007, Pub. L. 110-175, § 3; 121 Stat. 2524; 5 U.S.C. § 552(a)(4)(A)(ii).

25.    Despite Congress providing a statutory definition that does not include the "organized and operated" standard, that obsolete phrase still appeared in dozens of agency FOIA regulations at the time of CoA Institute's petition for rulemaking, including regulations promulgated by Cabinet-level and other important agencies.  *See* Ex. 1 at 4 nn.26–27 (collecting partial list of agencies that employed the outdated "organized and operated" standard as of June 2016); *see generally infra* ¶ 48.

26.     Until recently, OMB itself continued to use the anachronistic standard in its FOIA fee regulations, more than ten years after Congress provided a statutory definition.  *See* 5 C.F.R. § 1303.30(j) (1998).[1]

27.     In 2015, the D.C. Circuit held that it was no longer proper for agencies to use the "organized and operated" standard from the OMB Guidelines because Congress "omitted [that] language when it enacted [a] statutory definition in 2007." *Cause of Action v. Fed. Trade Comm'n*, 799 F.3d 1108, 1125 (D.C. Cir. 2015).

28.     The OMB Guidelines also fail to address other amendments to the FOIA contained in the FOIA Improvement Act of 2016, including new limitations on the assessment of certain fees when an agency's response is untimely.  *See* Pub. L. 114-185, 130 Stat. 538 (2016); *see* 5 U.S.C. § 552(a)(4)(A)(viii)(I)–(II).

## Judicial Interpretation: "Educational Institution"

29.     The OMB Guidelines not only conflict with the language of the FOIA statute, as in the case of a "representative of the news media," but they also conflict with judicial interpretations of other fee categories.

30.     Under the OMB Guidelines, the definition of an "educational institution," and the ability of a requester to qualify for it, depends on the application of an "institutional versus individual test."

---

[1] OMB issued a final rule updating its FOIA regulations, including fee provisions, in May 2019.  Among other things, the agency indicated that continued incorporation of language from the OMB Guidelines would cause "confusion" and "uncertainty." Freedom of Information Act, 84 Fed. Reg. 22,947, 22,950 (May 21, 2019) (to be codified at 5 C.F.R. pt. 1303) ("[OMB] agrees that continued textual deviations from the statutory definition may add confusion and uncertainty for requesters[.]").

31.    The OMB Guidelines maintain that this test categorically excludes the possibility of student requester qualifying for a fee reduction.  Ex. 3 at 3 (52 Fed. Reg. at 10,014) ("A student who makes a request in furtherance of a course of instruction is carrying out an individual research goal and the student would not qualify [for the 'educational institution' category].").

32.    In 2016, the D.C. Circuit rejected that aspect of the OMB Guidelines and forbade agencies from discriminating between student requesters, on the one hand, and administrators and teachers, on the other.  *See Sack v. Dep't of Def.*, 823 F.3d 687, 691–93 (D.C. Cir. 2016) ("It would be a strange reading of this broad and general statutory language—which draws no distinction between teachers and students—to exempt teachers from paying full FOIA fees but to force students with presumably fewer financial means to pay full freight.").

33.    DOJ-OIP has adopted the *Sack* court's ruling as reflecting the proper approach to applying the "educational institution" fee category and advised agencies accordingly.  *See* Office of Info. Policy, Dep't of Justice, FOIA Training: "Practical Approaches to Fee Determinations," *available at* http://bit.ly/2kJ0yi2.

34.    Notwithstanding the DOJ-OIP determination, OMB refuses to update its guidelines to reflect the state of the law.

## II.    Efforts to Update the OMB Guidelines and CoA Institute's Petition

35.    In April 2016, the FOIA Federal Advisory Committee recommended to David Ferriero, the Archivist of the United States, that he urge OMB to update the fee guidelines.  *See* Letter from James V.M.L. Holzer, Chair, FOIA Fed. Advisory

Comm., *et al.*, to David S. Ferriero, Archivist of the U.S., Nat'l Archives & Records Admin. (Apr. 19, 2016), *available at* http://bit.ly/2eQFkeR.

36.     As of October 2016, Archivist Ferriero had "sent the committee's recommendations . . . to [OMB] [but was] still waiting for a response." Tr. of Oct. 25, 2016 FOIA Fed. Advisory Comm. Meeting at 2–3, *available at* http://bit.ly/2hv9frq.

37.     On June 2, 2016, CoA Institute filed the petition for rulemaking at issue in this case. That petition requested that OMB "issue updated guidance to agencies on how to make [FOIA] fee determinations in compliance with binding statutory and judicial authorities." Ex. 1 at 1.

38.     In the same petition, CoA Institute also requested that OMB "update its own FOIA fee regulations, which conflict with statutory definitions." *Id.*

39.     On June 29, 2018, OMB sent a letter to CoA Institute denying the portion of the petition for rulemaking that requested OMB to update its FOIA fee guidelines.[2] Ex. 2.

40.     In denying that part of the petition, OMB declined to update its anachronistic definition of a "representative of the news media" and to provide clarity about the difference between FOIA fee categories and fee waivers. *Id.*

---

[2] OMB issued its denial of CoA Institute's petition for rulemaking amid litigation over the agency's failure to provide a timely response. In November 2017, CoA Institute filed a lawsuit to compel OMB to consider the petition. *See Cause of Action Inst. v. Office of Mgmt. & Budget*, No. 17-2310 (D.D.C. filed Nov. 2, 2017). On September 9, 2019, the district court dismissed the case as moot and denied CoA Institute's motion to amend and supplement the Complaint.

41.     OMB also ignored factual evidence and legal authority presented by CoA Institute that supported the need for OMB to update its guidelines.

42.     In response to CoA Institute's request that OMB update its own FOIA fee regulations, OMB responded that it "is in the process of updating its FOIA regulations, including fee regulations, to reflect statutory changes and recent judicial decisions." *Id*. at 1.

43.     OMB published a final rule implementing revised FOIA regulations on May 21, 2019. *See supra* note 1 (citing 84 Fed. Reg. at 22,947).

44.     OMB thus granted the portion of CoA Institute's petition for rulemaking that asked OMB to update its own FOIA fee regulations, and that portion of the petition is not implicated in this case.

## III.    OMB's Denial is Unsupported and Contrary to Agency Practice

45.     OMB's justification for denying CoA Institute's petition to update the agency's government-wide fee guidance depends on three premises: (1) that no agency subject to the FOIA "is <u>currently</u> relying" on outdated or superseded portions of the current fee schedule and guidelines, Ex. 2 at 1; (2) that "every agency subject to the FOIA" is already responsible for maintaining its own implementing regulations, which renders updated government-wide fee guidance "redundant," *id.* at 2; and (3) that any effort to update the guidance would be "an unreasonable and substantial use of . . . limited resources" because courts continue to "interpret[] the FOIA statute." *Id.*

46.    Each of OMB's purported bases for denying CoA Institute's petition, however, is factually infirm.

47.    *First*, agencies continue to rely regularly on OMB's government-wide guidance, despite that guidance being obsolete in various ways.

48.    Many agencies, for example, incorporate the "organized and operated" standard from the OMB Guidelines for their regulatory definitions of a "representatives of the news media."  Indeed, at least forty-four agencies do so:[3]

| Agency | Regulatory Citation |
|---|---|
| American Battle Monuments Commission | 36 C.F.R. § 404.6(j) |
| Appraisal Subcommittee of the Federal Financial Institutions Examination Council | 12 C.F.R. § 1102.301(j) |
| Board of Governors of the Federal Reserve System | 12 C.F.R. § 261.2(l) |
| Broadcasting Board of Governors | 22 C.F.R. § 503.1 |
| Central Intelligence Agency | 32 C.F.R. § 1900.02(h)(3) |
| Committee for Purchase from People Who Are Blind or Severely Disabled | 41 C.F.R. § 51-8.13(d)(1) |
| Commodity Futures Trading Commission | 17 C.F.R. pt. 145, App'x B(c)(3) |
| Defense Nuclear Facilities Safety Board | 10 C.F.R. § 1703.107(b)(1) |

---

[3] Some of the listed agencies have pending rulemakings to update their FOIA regulations, *viz.* the Board of Governors of the Federal Reserve System, the Committee for Purchase from People Who Are Blind or Severely Disabled, the Department of Agriculture, the General Services Administration, and the National Aeronautics and Space Administration.  All but one of these agencies intends to remove the "organized and operated" standard from their regulations and to implement instead the statutory definition.  The Department of Agriculture, however, would retain the outdated definition drawn from the OMB Guidelines.  *See* USDA Departmental Freedom of Information Act Regulations, 83 Fed. Reg. 26,865 (June 11, 2018) (to be codified at 7 C.F.R. pt. 1); *see generally* Cause of Action Inst., *CoA Institute Calls on Department of Agriculture to Revise Problematic FOIA Rule* (June 11, 2018), https://coainst.org/2kGj0bg.

| | |
|---|---|
| Department of Agriculture | 7 C.F.R. pt. 1, subpt. A, App'x A § 5(c)(1) |
| Department of Housing and Urban Development | 24 C.F.R. § 15.106(b) |
| Export-Import Bank of the United States | 12 C.F.R. § 404.2 |
| Farm Credit System Insurance Corporation | 12 C.F.R. § 1402.20(e) |
| Federal Election Commission | 11 C.F.R. § 4.1(n) |
| Federal Energy Regulatory Commission | 18 C.F.R. § 388.109(b)(1)(iv) |
| Federal Maritime Commission | 46 C.F.R. § 503.50(a)(7) |
| Federal Mediation and Conciliation Service | 29 C.F.R. § 1401.36(a)(7) |
| Federal Open Market Committee | 12 C.F.R. § 271.2(j) |
| General Services Administration | 41 C.F.R. § 105-60.305-1(i) |
| Gulf Coast Ecosystem Restoration Council | 40 C.F.R. § 1850.2(q) |
| Internal Revenue Service | 26 C.F.R. § 601.702(f)(3)(ii)(B) |
| Merit Systems Protection Board | 5 C.F.R. § 1204.12(b)(8) |
| Morris K. Udall Foundation | 36 C.F.R. § 1600.10(b)(6) |
| National Aeronautics and Space Administration | 14 C.F.R. § 1206.507(c)(3)(ii) |
| National Archives and Records Administration | 36 C.F.R. § 1250.3(q) |
| National Council on Disability | 5 C.F.R. § 10000.2 |
| National Credit Union Administration | 12 C.F.R. § 792.20(d) |
| National Labor Relations Board | 29 C.F.R. § 102.117(d)(1)(vii) |
| National Science Foundation | 45 C.F.R. § 612.10(b)(6) |
| National Transportation Safety Board | 49 C.F.R. § 801.60(b) |
| Neighborhood Reinvestment Corporation | 24 C.F.R. § 4100.4(d)(1)(iii) |
| Nuclear Regulatory Commission | 10 C.F.R. § 9.13 |
| Office of National Drug Control Policy | 21 C.F.R. § 1401.3(h) |
| Office of Personnel Management | 5 C.F.R. § 294.103(c) |
| Office of the Director of National Intelligence | 32 C.F.R. § 1700.2(h)(4) |
| Peace Corps | 22 C.F.R. § 303.2(j) |
| Pension Benefit Guaranty Corporation | 29 C.F.R. § 4901.31(b)(3)(i) |
| Railroad Retirement Board | 20 C.F.R. § 200.4(g)(2)(iii) |
| Selective Service System | 32 C.F.R. § 1662.6(a)(8) |
| Social Security Administration | 20 C.F.R. § 402.30 |
| Surface Transportation Board | 49 C.F.R. § 1002.1(f)(3) |
| U.S. Access Board | 36 C.F.R. § 1120.2(o) |
| U.S. Commission on Civil Rights | 45 C.F.R. § 704.1(e)(1)(viii) |
| U.S. International Boundary and Water Commission | 22 C.F.R. § 1102.2 |

| U.S. Patent and Trademark Office | 37 C.F.R. § 102.11(b)(6) |

49.     Some agencies do not have their own regulatory definition of a "representative of the news media," but instead refer directly to the OMB Guidelines.  *See, e.g.*, 28 C.F.R. § 802.10(a), (d)(3) (Court Services and Offender Supervision Agency for the District of Columbia); 22 C.F.R § 1502.7(a) (U.S. African Development Foundation).

50.     Additionally, upon information and belief, many government entities that qualify as "agencies" under 5 U.S.C. § 552(f)(1), but which are not otherwise agencies under the APA, *id.* § 551(1), and do not have the ability to promulgate regulations, rely on the OMB Guidelines in their administration of FOIA fee issues.

51.     *Second*, many agencies have failed to update their regulations to eliminate outdated language drawn from the OMB Guidelines.

52.     During the wave of regulatory updates that followed the implementation of the FOIA Improvement Act of 2016, multiple agencies issued direct final rules, thereby allowing them to bypass public comment altogether.

53.     In at least nine such instances, CoA Institute nevertheless filed an adverse comment addressing the retention of the "organized and operated" standard, but not a single agency revised its direct final rule, despite numerous other agencies having done so when CoA Institute raised the same concerns during standard notice-and-comment rulemaking.  *See, e.g.*, Cause of Action Inst., *Institute of Museum and Library Services Adopts CoA Institute's Recommendation for Revised FOIA Regulations* (May 21, 2019), https://coainst.org/2ma9MUZ (discussing adoption of CoA Institute's recommended changes at ten agencies).

54.     At the same time, some agencies resist regulatory comments asking the agencies to update FOIA fee policies by relying on the OMB Guidelines, even during informal rulemaking.  For example, on April 6, 2016, the Department of State ("State") finalized new FOIA regulations, including an update to its fee provisions.  *See* Public Access to Information, 81 Fed. Reg. 19,863 (Apr. 6, 2016) (to be codified at 22 C.F.R. pt. 171).

55.     In response to CoA Institute's comment regarding the so-called "middleman standard,"[4] an issue addressed in the OMB Guidelines, State replied that OMB "has policymaking responsibility for issuing fee guidance.   For this reason, . . . [State] defer[ed] to OMB with regard to this suggestion." *Id.* at 19,863.

56.     CoA Institute also has requested agencies to remove altogether any reference to the OMB Guidelines, so as to avoid confusion over whether the guidance is authoritative in the administration of FOIA.  *See, e.g.*, CoA Institute, *Cause of Action Institute Calls on NASA to Revise Proposed FOIA Rule* (May 28, 2019),  https://coainst.org/2Qu4DSM;  CoA Institute, *CoA Institute Calls on Inspectors General Council to Revise Proposed FOIA Regulations* (Oct. 15, 2019), https://coainst.org/2lJzH5S;  Cause  of  Action  Institute,  *CoA  Institute  Calls  on*

---

[4] Agencies use the "middleman standard" to deny FOIA requesters preferable fee treatment by claiming a requester is a "middleman" or "information broker" and is not in the practice of releasing information to the public itself.  The D.C. Circuit has found this argument lacking.  *See Cause of Action*, 799 F.3d at 1125 ("We also disagree with the suggestion that a public interest advocacy organization cannot satisfy the statute's distribution criterion because it is 'more like a middleman for dissemination to the media than a representative of the media itself' . . . [T]here is no indication that Congress meant to distinguish between those who reach their ultimate audiences directly and those who partner with others to do so[.]").

*General Services Administration to Revise Proposed FOIA Regulations* (June 20, 2018), https://coainst.org/2lHPNwJ.

57.     Two agencies have finalized rules that retain references to the OMB Guidelines.  The Institute for Museum and Library Services ("IMLS"), for its part, provided an explanation of its decision not to eliminate citations to the OMB Guidelines:

> The revised [rule's] reference to the OMB Guidelines are general references to the overall guidelines; and *such guidelines remain in force, continuing to generally apply to agency FOIA regulations*.  These references to the OMB Guidelines . . . also are consistent with the [DOJ's] [OIP] Template for Agency FOIA Regulations and consistent with the language used by many other government agencies, including the [DOJ], which provides interagency leadership on FOIA matters.

Freedom of Information Act Regulations and Additional Incidental Technical Amendments to Other IMLS Regulations, 84 Fed. Reg. 22,943, 22,943 (May 21, 2019) (to be codified at 2 C.F.R. pt. 3187; 45 C.F.R. pts. 1181–82,84) (emphasis added).

58.     The IMLS and State's responses reveal that agencies still rely on the OMB Guidelines as binding, despite outdated and problematic provisions.

59.     The IMLS's response also demonstrates the government-wide importance of the OMB Guidelines, insofar as it refers to the model FOIA regulations developed by DOJ-OIP.

60.     DOJ-OIP's template rule repeatedly refers to the OMB Guidelines and explains that agency regulations "must comply" with them and that they should be

cited as general guidance. Office of Info. Policy, Dep't of Justice, Template for Agency FOIA Regulations, http://bit.ly/2oG7tKf (last visited Sept. 17, 2019).

61.    *Finally*, the ongoing development of FOIA caselaw, as with the development of law generally, cannot excuse an agency from endeavoring to keep its regulations and guidance up-to-date.

## IV.    OMB's Denial of the Petition Causes Ongoing Injury to CoA Institute

62.    CoA Institute is a frequent FOIA requester. It uses the FOIA, along with other tools, to investigate government operations, advocate for open government, and educate the public. *See supra* ¶ 11.

63.    CoA Institute has filed multiple FOIA requests with agencies that continue to follow the OMB Guidelines, including agencies that have retained the "organized and operated" standard, *see supra* ¶ 48, and agencies that continue to refer to related aspects of OMB's guidance. *See supra* ¶¶ 54–55, 56.

64.    Some of CoA Institute's requests at these agencies are still pending.

65.    CoA Institute intends to file future requests with the same agencies.

66.    In its FOIA requests, CoA Institute always includes a request for categorization as a "representative of the news media" for fee purposes.

67.    Agencies' past denials of CoA Institute's news media fee status requests have necessitated lengthy and costly administrative appeals, and even appellate litigation, to ensure proper application of the statutory definition of a "representative of the news media" instead of OMB's "organized and operated"

standard.  *See supra* ¶ 27 (citing *Cause of Action v. Fed. Trade Comm'n*, 799 F.3d 1108 (D.C. Cir. 2015)).

68.   Some agencies still deny CoA Institute's fee category requests, despite CoA Institute's direct references to the statutory definition and persuasive caselaw. As a result, CoA Institute is forced to file administrative appeals, which significantly delay the FOIA process, and to consider litigation.

69.   The denial of a fee category request imposes additional costs when requesting records that would not otherwise be applicable under the FOIA.

70.   OMB's failure to update its fee guidelines contributes to agencies improperly adjudicating FOIA fee category requests—including requests submitted by CoA Institute.

71.   The outdated OMB Guidelines also contribute to agency misapplication of the FOIA in other contexts, such as the "middleman standard."

72.   Inasmuch as OMB refuses to initiate (and finalize) a rulemaking to update its FOIA fee guidelines, CoA Institute is injured, and will continue to be injured, whenever it files a FOIA request with an agency that refers to the OMB Guidelines as authoritative for the adjudication of fee issues, then bases its adverse FOIA determinations on those guidelines.

73.   It is crucial that OMB update its fee guidelines to bring them in line with the current FOIA statute and relevant jurisprudence.

<u>C<small>OUNT</small> 1</u>

**Violation of the APA: Failure to Provide a Properly Reasoned Denial**

74.　CoA Institute repeats all of the foregoing paragraphs.

75.　The APA affords interested persons the right to petition an agency for the issuance, amendment, or repeal of a rule.  5 U.S.C. § 553(e).

76.　The APA requires agencies to process such petitions "within a reasonable time[.]"  *Id.* § 555(b).

77.　The APA requires agencies to provide prompt notice of any denial of a petition made by an interested person and a statement explaining the grounds for the denial.  *Id.* § 555(e).

78.　OMB therefore has an obligation to respond to CoA Institute's petition for rulemaking, either by initiating the appropriate rulemaking or by denying the petition and providing a reasoned statement explaining the grounds for the denial.

79.　The APA authorizes this Court to "compel agency action unlawfully withheld or unreasonably delayed."  *Id.* § 706(1).

80.　The APA authorizes this Court to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"  *Id.* § 706(2)(A).

81.　CoA Institute is an "interested person" within the meaning of the APA. 5 U.S.C. § 553(e).

82.     On June 2, 2016, CoA Institute petitioned OMB "to issue updated guidance to agencies on how to make [FOIA] fee determinations in compliance with binding statutory and judicial authorities." Ex. 1 at 1.

83.     OMB's June 29, 2018 letter responding to the petition for rulemaking denied CoA Institute's request to update is FOIA guidelines, but that denial was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law within the meaning of the APA.

### RELIEF REQUESTED

WHEREFORE, Plaintiff CoA Institute respectfully requests and prays that this Court:

a.     Declare that OMB's denial of CoA Institute's petition for rulemaking that OMB update its FOIA fee guidelines was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

b.     Order OMB to update its outdated FOIA fee guidelines;

c.     Award CoA Institute its costs and reasonable attorney fees incurred in this action, pursuant to 28 U.S.C. § 2412; and

d.     Grant such other relief as the Court may deem just and proper.

//

//

//

Dated: September 17, 2019                    Respectfully submitted,

                                             */s/ Ryan P. Mulvey*
                                             Ryan P. Mulvey
                                             (D.C. Bar No. 1024362)
                                             R. James Valvo, III
                                             (D.C. Bar No. 1017390)
                                             Lee A. Steven
                                             (D.C. Bar No. 468543)

                                             CAUSE OF ACTION INSTITUTE
                                             1875 Eye Street, N.W., Suite 800
                                             Washington, D.C. 20006
                                             Telephone: (202) 499-4232
                                             Facsimile: (202) 330-5842
                                             ryan.mulvey@causeofaction.org
                                             james.valvo@causeofaction.org
                                             lee.steven@causeofaction.org

                                             *Counsel for Plaintiff CoA Institute*